UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ERIC ELLIS, | No. CV 16-2803-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 22, 2016, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on May 17, 2016, and June 22, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on December 8, 2016, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 16, 1972. [Administrative Record ("AR") at 20, 210.] He has past relevant work experience as an electronic test engineer, president of a company, shipping clerk, and test technician. [AR at 20, 49-50.]

On January 19, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since January 1, 2012. [AR at 12, 210.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 12, 93-96.] A video hearing was held on August 18, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 27-55.] A vocational expert ("VE") also testified. [AR at 48-54.] On August 29, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2012, the alleged onset date, through August 29, 2014, the date of the decision. [AR at 12-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7-8.] When the Appeals Council denied plaintiff's request for review on February 26, 2016 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.[1] [AR at 14.] At step two, the ALJ concluded that plaintiff has the severe impairments of rheumatoid arthritis; degenerative joint disease; reported history of ankylosing spondylitis; cubital tunnel syndrome; migraines; and obesity. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as

---

[1]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. [AR at 14.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional
(continued...)

4

defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [C]an occasionally climb; he can frequently balance, stoop, kneel, crouch, and crawl; he can occasionally reach and perform fine and gross manipulation; he must avoid temperature extremes or hazards; and he must avoid concentrated exposure to vibration.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as an electronics test engineer, president of a company, shipping clerk, and test technician. [AR at 20, 50-51.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "usher" (Dictionary of Occupational Titles ("DOT") No. 344.677-014), "furniture rental clerk" (DOT No. 295.357-018), and "counter clerk" (DOT No. 249.366-010). [AR at 21, 50-51.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2012, through August 29, 2014, the date of the decision. [AR at 21.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he failed to articulate specific, clear, and convincing reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[2](...continued)
limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

A.  **SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.[4]  [JS at 32.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks

---

[4]  On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect.  See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted) ("SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations.").  SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms.  Id. at *1.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation."  Id.  Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."  Id. at *10.  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  Id. at *2.  The ALJ's 2014 decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively.  Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)).  Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations.  However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, and neither party specifically contends that SSR 16-3p should apply herein, the Court need not resolve the retroactivity issue.  Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

omitted). If the claimant meets the first test, and the ALJ does not find evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find evidence of malingering. [See generally AR at 16-20.] In discounting plaintiff's credibility, the ALJ specifically found the following: (1) the objective medical evidence of record revealed a history of treatment for aches and pains, and physical examinations revealed some tenderness on various parts of the body, "which were treated conservatively with medications" but "x-ray scans of various joints were all within normal limits"; (2) plaintiff's bilateral cubital tunnel syndrome and migraines were treated conservatively; (3) plaintiff admitted daily activities including "taking walks, feeding his dog, maintaining his grooming and hygiene, preparing simple meals, performing household chores, mowing the lawn, driving, using the computer, attending church regularly, and going to the park regularly," as well as watching television; (4) the medical records do not corroborate plaintiff's allegations of various side effects from the use of medications, and the record does not indicate that those side effects would interfere with his ability to perform work activities in any significant

manner; (5) there is no atrophy in plaintiff's upper or lower extremities; and (6) although plaintiff stated that he spends most of his day in bed due to pain, he also stated that he walked three miles a day, five times per week. [AR at 18-19 (citations omitted).]

For the reasons stated below, the Court finds that the ALJ did not provide specific, clear and convincing reasons for rejecting plaintiff's testimony about the severity of his symptoms.

### 1. Objective Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). However, as the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted). The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493.

Here, the ALJ acknowledged the following: plaintiff "has a history of receiving treatment for aches and pains"; he complained of multiple joint pain; physical examinations "revealed some tenderness on various parts of his body"; he complained of pain in his hands with numbness and tenderness and locking of his fingers"; physical examination revealed "tenderness in the upper extremities, positive Adson test, and positive arm flexion test with numbness and tingling into fingers"; and "electrodiagnostic testing revealed bilateral cubital tunnel syndrome." [AR at 18 (citation omitted).] Then, without any explanation as to its relevance, the ALJ simply noted that the x-rays of plaintiff's joints taken on June 6, 2012, "were all within normal limits." [Id. (citations omitted).] The ALJ did not identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his determination that plaintiff was "not entirely

credible" [AR at 17]; Brown-Hunter, 806 F.3d at 494. Indeed, there is no indication in the record that plaintiff's treating providers changed their treatment of his complaints based on the results of these x-rays. [See, e.g., AR at 456-66, 499-512.] In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Brown-Hunter, 806 F.3d at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103; Burrell, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 2. Conservative Treatment History

The ALJ also discounted plaintiff's subjective symptom testimony because his complaints of joint pain were "treated conservatively with medications" and his bilateral cubital tunnel syndrome and migraine headaches "received conservative medical treatment." [AR at 18 (citations omitted).]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.

1999).

Here, the medications plaintiff reported taking at the time he applied for benefits in March 2012 include: Ambien for his insomnia; Chorionic Gonadotropin and Testosterone Cypionate to treat low testosterone levels due to the side effects of the rheumatoid arthritis medications; and cyclobenzaprine, Flexeril, methadone, oxycodone-acetaminophen, Percocet, and zolpidem for his rheumatoid arthritis. [AR at 238; see also AR at 34 (explaining that the medication list provided to the ALJ shows the history of the medications plaintiff has been prescribed for the past several years); see also AR at 596 (listing medications as of May 8, 2014: cyclobenzaprine, Fluvirin, losartan, Maxalt, methadone, oxycodone-acetaminophen, testosterone cypionate, venlafaxine (for depression), and zolpidem).] Thus, plaintiff's prescription pain medications include several strong prescription narcotic medications. See Meanel, 172 F.3d at 1114 (stating that a physician's *failure* "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain" may be evidence of conservative treatment). Additionally, the ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's physical impairments.[5] Indeed, plaintiff testified that his rheumatoligist "says there's nothing more [plaintiff] can do . . . [and] [his] only course is the pain management which is like the Methadone and stuff like that." [AR at 35.] Based on this record, the Court cannot not find that the ALJ's conclusion that plaintiff's treatment history has been conservative in nature, is supported by the record.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

/

/

/

---

[5] At least one physician "discussed surgical options" for plaintiff's impairments. [See AR at 524.] Moreover, plaintiff was prescribed a TENS unit and a MENS unit [AR at 267, 516-17], participated in physical therapy [AR at 518-19], and obtained treatment from a pain specialist. [AR at 468-97.] He also reported that he uses knee braces three to four times a week, wrist braces a "couple times a week," elbow braces when it is raining or damp, and a cane when it is raining or when his knees are very bad. [AR at 267.]

10

### 3. Daily Activities

With respect to plaintiff's daily activities, the ALJ stated the following:

> [Plaintiff] admitted activities of daily living, including taking walks, feeding his dog, maintaining his grooming and hygiene, preparing simple meals, performing household chores, mowing the lawn, driving, using the computer, attending church regularly, and going to the park regularly. [Plaintiff's] wife also indicated that [plaintiff] is able to watch television.

[AR at 18-19 (citations omitted).]

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

Here, the ALJ merely implied that plaintiff's "admitted" activities provide evidence that plaintiff's testimony was "not entirely credible." [AR at 18.] Moreover, the ALJ failed to take into account plaintiff's complete description of the scope of these various activities. For instance, plaintiff has only one dog that he feeds "occasionally"; his wife helps him with chores; it takes him longer to button his shirt because the buttons "are harder to do"; he shaves less frequently because his hands hurt when he shaves; it is hard to hold a toothbrush because it hurts his hands; he prepares some sandwiches and frozen foods; he mows the lawn one to two times a month on a day that he does not "feel as bad," and mowing the lawn takes less than fifteen minutes; he uses his computer or tablet one to two times a week "with difficulty" and for no more than fifteen minutes at a time; he does about two loads of laundry a week and each load takes about five to ten minutes; he takes out the trash once a week; and, depending on his pain level, his wife will do these chores. [AR at 262-63.] Thus, the amount of involvement plaintiff described in these activities was minimal. The ALJ does not explain how this level of activity describes a person capable of engaging in even basic work activity or how it is inconsistent with plaintiff's subjective symptom testimony. [AR at 18-19.] Indeed, plaintiff's reported level of activity clearly *does* reflect that he has difficulties in performing his daily activities.

11

1  Thus, this was not a specific, clear and convincing reason for discounting plaintiff's
2  subjective symptom testimony.

### 4. Side Effects of Medication

With respect to side effects from medications, the ALJ stated the following:

> The medical records, such as office treatment notes, do not corroborate allegations of side effects of medications. Although [plaintiff] has alleged various side effects from the use of medications, the record did not indicate that those side effects would interfere with [plaintiff's] ability to perform work activities in any significant manner.

[AR at 19.] The ALJ does not specify the side effects purportedly alleged by plaintiff. Although plaintiff testified at the hearing that he is "extremely fatigued all the time," he did not specifically attribute that fatigue to his medications. [See AR at 38-39, 44-45.] He also testified that when he took Methotrexate he would fall asleep and not even know it; taking Arthrotec resulted in the whites of his eyes turning dark red; and NSAIDs make his stomach "acidy and sick feeling all the time." [AR at 44.] At the time of the hearing, however, he was not taking either Methotrexate or Arthrotec. [Id.] In fact, it appears that he stopped taking these two medications sometime prior to June 2001, and the record clearly reflects that he is allergic to Arthrotec. [See, e.g., AR at 515, 521.] There is also evidence that he is allergic to Previcid [AR at 521], and that prednisone caused stomach upset. [AR at 501.] With respect to the medications he was taking at the time of the hearing, however, plaintiff noted only that the narcotic pain relievers "messed up" his hormone levels so that he needs to get testosterone injections. [AR at 45.] The record supports plaintiff's need for testosterone shots as a result of the use of narcotic pain medication. [See, e.g., AR at 599.]

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 5. Atrophy

In finding plaintiff "not entirely credible," the ALJ generally stated that "[t]here is no evidence of atrophy in [plaintiff's] upper or lower extremities." [AR at 19.] The ALJ, however, cited no

12

evidence that the absence of atrophy was inconsistent with plaintiff's pain levels, particularly given that plaintiff admitted that he was not confined to his bed or otherwise unable to walk or move. Cf. Meanel, 172 F.3d at 1114 (9th Cir. 1999) (ALJ permissibly discounted claimant's complaint that her pain required her to "lie in a fetal position all day" because she "did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"); see also Lapeirre-Gutt v. Astrue, 382 Fed. App'x 662, 665 (9th Cir. 2010) (ALJ's reliance on lack of muscle atrophy inappropriate where "no medical evidence sugest[ed] that high inactivity levels necessarily lead to muscle atrophy"); Winans v. Colvin, 2014 WL 4259471, at *6 (D. Ariz. Aug. 29, 2014) (an ALJ's observation regarding lack of atrophy was "consistent with the fact that several physicians observed that Plaintiff had no muscle weakness;" nevertheless, ALJ's reliance on his own observations regarding "the significance of the absence of those findings" was error). Moreover, the ALJ may not substitute his lay opinion (here, in implicitly finding that the absence of evidence of atrophy was at odds with plaintiff's subjective symptom testimony), for that of a professional. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater RFC based on claimant's testimony that he took a road trip; there was no medical evidence to support the ALJ's determination); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record). This is exactly what the ALJ did here.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 6. Inconsistent Statements

The ALJ stated that the record "reflects some inconsistencies as well: [plaintiff] stated [on April 25, 2012,] that he spends most of his day in bed due to pain, yet he stated [on May 20, 2013,] that he walked three miles a day, five times per week." [AR at 19 (citing AR at 261, 521).]

The ALJ mischaracterizes plaintiff's testimony. Although plaintiff indicated in his Function Report - Adult that during the day he "[m]ostly stay[s] in bed," he also stated that he "*tr[ies] to get a little bit of exercise by walking.*" [AR at 261 (emphasis added).] Plaintiff also clarified that he "must go out once per day to walk" or he will get a migraine. [AR at 264.] He also stated that how well he walks depends on how he feels on any given day; he walks slower and it hurts him to walk; he can walk about one mile before needing to rest for fifteen to twenty minutes; and his pain increases with the distance walked. [AR at 264-66.] His statement to the orthopedic evaluator in 2013 that he "walks u*p to* 3 miles a day five times a week" [AR at 521 (emphasis added)], does not in any way explain how long it takes him to walk that distance, how often he is able to walk a distance of three miles, or what kind of rest breaks he needs to take during his walks. In short, plaintiff's statements are not necessarily inconsistent.

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

**B.     CONCLUSION**

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit his subjective symptom testimony. Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination); see Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'").

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this

1  discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke
2  v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must
3  be resolved before a determination can be made, and it is not clear from the record that the ALJ
4  would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is
5  appropriate. See Benecke, 379 F.3d at 593-96.

6  In this case, there are outstanding issues that must be resolved before a final determination
7  can be made. In an effort to expedite these proceedings and to avoid any confusion or
8  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand
9  proceedings. Because the ALJ failed to provide specific, clear and convincing reasons, supported
10 by substantial evidence in the case record, for discounting plaintiff's subjective symptom
11 testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective
12 allegations and either credit his testimony as true, or provide specific, clear and convincing
13 reasons, supported by substantial evidence in the case record, for discounting or rejecting any
14 testimony. If warranted, the ALJ shall reassess plaintiff's RFC and determine, at step five, with
15 the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the
16 national economy that plaintiff can still perform.[6]

17 /
18 /
19 /
20 /
21 /
22 /
23 /
24 /
25 /

---

[6] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 12, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE